UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| APRIL B,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 4:24-cv-00094-KMB-SEB |
| | ) |
| FRANK BISIGNANO,[2] | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

On May 16, 2017, Plaintiff April B. applied for disability benefits and supplemental security income from the Social Security Administration ("SSA") on behalf of B.C.,[3] alleging an onset date of December 29, 2016. [Dkt. 11-8 at 13.] This case has taken a circuitous path involving multiple appeals, and most recently Administrative Law Judge Thuy-Anh T. Nguyen (the "ALJ") issued a decision on June 26, 2023, concluding that B.C. was not disabled and not entitled to receive the requested benefits. [Dkt. 11-8 at 9.] April requested review through written exceptions and ultimately filed a Complaint in this Court for review on July 8, 2024. [Dkt. 1.] The Parties have jointly consented, and this matter was referred to the undersigned to conduct all

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinion.

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[3] In accordance with Federal Rule of Civil Procedure 5.2(a), the Court uses the initials of the claimant because claimant is a minor.

proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Of note, April filed an additional disability claim in December 2020, alleging an onset date of December 18, 2020. That claim was granted on the basis that B.C. met Listing 111.07 relating to cerebral palsy at that time. [Dkt. 11-8 at 13.] Despite the subsequent award of benefits, this case remains pending to address whether B.C. is also entitled to benefits from December 29, 2016 (the alleged onset date in the underlying claim), until December 18, 2020 (the date B.C. was awarded benefits).

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 587 U.S. 97, 98 (2019). While "[s]ocial security disability benefits are designed for disabled workers . . . low-income parents or guardians may obtain them on behalf of disabled children as well." *Keys v. Barnhart*, 347 F.3d 990, 991 (7th Cir. 2003). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record

as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a sequential three-step test for determining whether a child claimant is disabled. 20 C.F.R. § 416.924. Under this test, the ALJ must evaluate the following in sequence:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; and (3) if so, whether the impairment meets, equals or functionally equals an impairment listed in SSA regulations as being presumptively disabling.

*Baker v. Barnhart*, 410 F. Supp. 2d 757, 760 (E.D. Wis. 2005); *see also L.D.R. v. Berryhill*, 920 F.3d 1146, 1150 (7th Cir. 2019). If a child meets or equals a listing, then the child is entitled to benefits "without any further inquiry." *Keys*, 347 F.3d at 992. However, if no listing is met, the ALJ must determine whether the claimant's impairment or combination of impairments functionally equals a listing in one of the six domains of functioning:

> (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting with and relating to other people; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1); *see also L.D.R.*, 920 F.3d at 1150-51. The "domains of functioning" replace the vocational analysis adults undergo with a functional analysis that "inquir[es] into the impact of an impairment on the normal daily activities of a child of the claimant's age." *Sullivan v. Zebley*, 493 U.S. 521, 539-40 (1990). A child is disabled when the ALJ determines they have a

3

"marked" limitation in at least two domains or an "extreme" limitation in at least one domain. 20 C.F.R. § 416.926a(a). The ALJ must consider the combined effect of all medically determinable impairments, not just impairments found to be "severe" at Step Two. *Mosley v. Kijakazi*, 2022 WL 4535203, at *11 (N.D. Ill. 2022). The regulations define a "marked" limitation as one that interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation is one that interferes "very seriously" with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). The regulations also provide a corresponding quantitative definition for both "marked" and "extreme" limitations:

> "Marked" and "extreme" limitations in a given domain can be established by standardized test scores that are two or three standard deviations, respectively, below the mean—that is, either in the lowest 2.5 percent of the distribution or the lowest one-half of 1 percent—provided, however, that the scores are representative of day-to-day functioning. 20 C.F.R. §§ 416.926a(e)(2)(iii), 416.926a(e)(3)(iii). Test scores are not conclusive[.]

*Keys*, 347 F.3d at 994.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. "An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). But if the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," remand is required. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Additionally, when constructing the logical bridge, the ALJ must be careful not to "play the role of doctor and interpret medical evidence when he or she is not qualified to do so." *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007).

When an ALJ's decision does not apply the correct legal standard, remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). Arguments that are "perfunctory and underdeveloped" by a party are waived. *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (internal quotations omitted).

## II. BACKGROUND[4]

B.C. was five months old when April B., the Plaintiff, applied for disability benefits on B.C.'s behalf. [Dkt. 11-2 at 47.] On October 3, 2019, the ALJ held a hearing. [Dkt. 11-2 at 65-74.] The ALJ denied the claim on December 6, 2019, [dkt. 11-2 at 53], and on August 27, 2020, the Appeals Council denied April's request for review, [dkt. 11-2 at 2-7]. April appealed, [dkt. 11-9 at 26-30], and the District Court remanded the case back to the ALJ, [dkt. 11-9 at 37-38]. The ALJ held another hearing in May 2023, [dkt. 11-8 at 32-42], and again denied benefits on June 26, 2023, [dkt. 11-8 at 9-22]. April again appealed the agency's unfavorable decision, and that appeal is the subject of this review.

The ALJ followed the three-step sequential evaluation set forth by SSA in 20 C.F.R. § 416.924(a) and concluded that B.C. was not disabled for the period at issue. [Dkt. 11-8 at 9-22.] Specifically, the ALJ found as follows:

- At Step One, B.C. has not engaged in substantial gainful activity since May 16, 2017, the alleged onset date. [Dkt. 11-8 at 14.]

- At Step Two, B.C. has the following severe impairments: cerebral palsy of the left side, motor delay, adrenal insufficiency, reactive airway disease, asthma, obesity, and speech and language delay. [Dkt. 11-8 at 14.]

---

[4] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

5

- At Step Three, prior to December 18, 2020, B.C. does not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments. [Dkt. 11-8 at 14.]

- Also at Step Three, prior to December 18, 2020, B.C. does not have an impairment or combination of impairments that functionally equal the severity of the listings. [Dkt. 11-8 at 15.] Specifically, the ALJ found that B.C. had "less than a marked limitation" in all six specific domains of functioning. [Dkt. 11-8 at 16.]

### III. DISCUSSION

April raises three issues for the Court's review: (1) whether the ALJ improperly evaluated B.C.'s limitations at the functional analysis in Step Three; (2) whether the ALJ's failure to obtain a medical expert was error; and (3) whether the ALJ failed to properly consider Listing 111.07 (Cerebral Palsy), under which the claimant was later awarded disability benefits. [Dkt. 13 at 9.]

The Commissioner filed a brief in response supporting the ALJ's conclusions, emphasizing that just because "a child claimant is found disabled under the Social Security Act does not mean that the child was disabled before that point." [Dkt. 15.] The Commissioner contends that the ALJ carefully weighed the evidence pertaining to the relevant period and properly found that the evidence showed that B.C's severe impairments neither met nor medically equaled any section of the Listing. [*Id.*] The Commissioner also addresses the remaining arguments raised by April and asks the Court to affirm the decision denying B.C. benefits.

April failed to file a reply brief and the time to do so has long since passed. To some extent, the Court construes the failure to file a reply brief as an acknowledgement of the correctness of the Commissioner's arguments. See *East v. Astrue*, 2010 WL 1751720, at *1 (S.D. Ind. 2010) (interpreting the claimant's "failure to file a reply brief as an acknowledgment of the correctness of the Commissioner's" arguments); *Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 950 (N.D. Ill. 2010) (finding that "failure to respond to an opposing party's argument implies concession"); *Law v. Medco Rsch. Inc.*, 113 F.3d 781, 787 (7th Cir. 1997)

(explaining that "[f]ailure to contest a point is not necessarily a waiver, but it is a risky tactic, and sometimes fatal"); *Milam v. Dominick's Finer Foods, Inc.*, 567 F.3d 830, 832 (7th Cir. 2009) (interpreting "plaintiffs' silence in their response as acknowledgment"). The Court will, however, address each of the issues raised by April in turn.

### A. April's has not shown reversible error regarding the ALJ's evaluation of B.C.'s limitations at Step Three.

April argues that the ALJ overlooked evidence in the record that clearly established functional equivalence to a Listing. April points to the Ages & Stages Questionaries completed as a part of Dr. Wang's autism evaluation for B.C., which found that B.C. had below cutoff scores in several areas including Communication and Personal Social. [Dkt. 17-8 at 112.] Additionally, April cites a visit with Dr. Lakhotia on April 9, 2019, where Dr. Lakhotia observed that B.C. was experiencing "mild receptive language delay and severe expressive language delay" and only had "4 words and two signs." [Dkt. 17-8 at 122.]

The Commissioner argues that substantial evidence supports the ALJ's finding that B.C.'s limitations in the six functional domains were less than marked. [Dkt. 15 at 2.] The Commissioner details evidence on which the ALJ relied and emphasizes that courts rightfully give deference to an ALJ's findings when they are supported by substantial evidence. [*Id.* at 2-4.] To the extent that April argues that the ALJ failed to properly evaluated B.C.'s limitations in each of the six functional limitations, the Commissioner contends that she does not raise a specific argument with respect to any domain and this vague argument should be considered waived. [*Id.* at 4-5.]

If substantial evidence supports the ALJ's decision, the court must allow the decision to stand, even if reasonable minds would differ on the outcome. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). While an ALJ may not "ignore a line of evidence supporting a finding of

7

disability" and must "build a logical bridge from that evidence to [the] conclusion," the ALJ does not have to mention every piece of evidence in the record. *Chrisman v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (internal quotations omitted).

In this case, April fails to convincingly identify how the ALJ's decision is not supported by substantial evidence. While the ALJ did not quote Dr. Lakhotia's notes as April's brief does, the ALJ does cite to this visit and mentioned Dr. Lakhotia's ultimate recommendation of speech therapy for B.C. [Dkt. 11-8 at 18.] The ALJ found that B.C. had a language delay at Step Two and incorporated several record citations that pointed to B.C.'s limited range of words and expressive and receptive language delays. [Dkt. 11-8 at 18.] After reviewing the record, the Court concludes that the ALJ did consider B.C.'s language delay, especially more than the "most minimal of articulation requirements" that ALJs are required to use. *Warnell v. O'Malley*, 97 4th 469, 471 (7th Cir. 2024).

April is correct that the ALJ does not mention the Ages & Stages Questionnaire ("ASQ"); however, the ALJ did consider other comparable standardized tests and the ALJ need not consider every piece of evidence in the record. For example, the ALJ cites to B.C.'s First Steps Evaluation, which found a standard deviation of -2 in B.C.'s Social and Social Communication scores. [Dkt. 11-7 at 573.] These findings were more recent than the ASQ and found similar results. [*Compare* dkt. 11-7 at 473 (the ASQ results) *with* dkt. 11-7 at 573 (the First Steps Evaluation)]; *see also Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (concluding that an ALJ should not rely on an outdated assessment when newer evidence is available). Additionally, standardized test scores are not conclusive, meaning that the ALJ should weigh the results of a standardized test alongside other evidence. *See Flener*, 361 F.3d at 449; *Keys*, 347 F.3d at 994. After reviewing the record, the Court concludes that the ALJ's decision was supported by substantial evidence

and her failure to specifically reference the ASQ is not reversible error, given that she referenced a more recent and comparable assessment. The Court also agrees with the Commissioner that to the extent April's argument does not allege which domain or domains of functioning the ALJ should have found for B.C. to have a marked or extreme limitation in, April's argument has been waived. For all these reasons, the Court concludes that April has not shown reversible error on this issue.

> **B. The ALJ was not required to obtain an updated medical expert's opinion to determine functional equivalency and did not improperly interpret any medical data.**

April alleges that the ALJ created an evidentiary deficit when she found no medical opinion to be controlling or persuasive. Without a persuasive medical opinion, April argues, the ALJ was left to interpret the medical evidence on her own, which is not permissible for an ALJ to do. [Dkt. 13 at 13-14.]

In response, the Commissioner emphasizes that the ALJ alone makes the determination of a child's functional abilities. The Commissioner also argues that evidentiary deficits are only created when no medical evidence exists or insufficient medical evidence is relied upon when determining the child's functional capacity. [Dkt. 15 at 7.]

When an ALJ rejects all opinions by medical professionals, that *may* create an evidentiary gap, especially if the evidence in the record conflicts with the recommended RFC or the functional analysis for a child. *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010); *see also Benito M. v. Kijakazi*, 2022 WL 2828741 at *3 (N.D. Ill. 2022) (holding that *Suide* never created a bright line rule that rejection of all medical opinions required remand). An evidentiary gap can also be created if the ALJ crosses the line from evaluating medical opinions, which is required by the regulations, into forming medical opinions, which the ALJ is not allowed to do. *Dale v. Saul*, 2019 WL

9

4072117 at *3 (N.D. Ind. 2019).  Most commonly, an ALJ crosses this line by making inferences from facts in the record not substantiated by a medical expert. *Van Dusen v. Kijakazi*, 2021 WL 3549615, at *4 (N.D. Ind. 2021).  Making this mistake invites the ALJ's individual bias into decisions that should be informed by medical evidence alone. *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569-70 (7th Cir. 2003) ("an ALJ may not rely on a hunch"); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (holding that the ALJ played doctor by inferring that the claimant's job as a small business owner was incompatible with a diagnosis of major depression).  While the ALJ must rely on medical evidence when determining functional equivalency, there is no requirement that the ALJ must request an updated medical opinion. *Cora T. v. Berryhill*, 2019 WL 1206129, at *4 (Ind. S.D. 2019).  Ultimately, the ALJ has "substantial discretion" to make the functional equivalency determination after weighing the evidence in the record. *Keys*, 347 F.3d at 994.

      Here, the ALJ did not find any medical opinion to be persuasive.  This by itself, however, does not create an evidentiary gap.  April fails to "identify medical evidence that was incorrectly interpreted by the ALJ which should have been reviewed by an expert." *Cora T.*, 2019 WL 1206129, at *4.  Although April takes issue with certain credibility determinations made by the ALJ, including her own and those of B.C.'s teachers and school, April does not explain how the ALJ's "partially credible" rating was improper or how a different credibility rating would change the outcome.  Failing to further develop this argument also results in waiver. *Hall*, 906 F.3d at 644.

      Additionally, the ALJ did rely on percentile data and the observable, everyday behaviors of B.C. to reach her conclusion.  [*See, e.g.*, dkt. 11-8 at 18.]  "[G]eneral observations of daily behavior and restrictions that might result from a medical condition" is not medical evidence and

10

so does not require the interpretation of a medical expert. *Murphy*, 496 F.3d at 634. Additionally, percentile data is not raw medical data since the data has already been placed into the context of a child's peers and does not require a medical professional to further interpret the data. *See* 20 C.F.R. § 416.926a(e)(1)(ii) (test scores with standard deviations will be considered "together with the information we have about your functioning" by the ALJ). After reviewing the record, the Court concludes that the ALJ in this case did not make her own interpretation of B.C.'s medical records and instead permissibly relied on data that placed B.C. in the context of his peers. As such, April has not shown reversible error.

### C. The ALJ properly considered Listing 111.07, and a diagnosis alone does not confer a finding of disability.

April asserts that it is illogical that B.C. could have been diagnosed with cerebral palsy during the initial disability period but not awarded disability benefits for that time, especially given that B.C. was later found to have a disability from Listing 111.07 (Cerebral Palsy). [Dkt. 13 at 14-15.]

The Commissioner responds that a disability finding is based on the medical evidence involving the severity of an impairment, not the condition or diagnosis of the claimant. The Commissioner also points out that the ALJ did consider Listing 111.07 in her opinion and found that the requirements were not met at that time. [Dkt. 15 at 7-8.]

The Court agrees with the Commissioner on this issue. While B.C. was later found to have a disability based on the Listing for cerebral palsy, this does not immediately confer a finding of prior disability. *See McGillem v. Kijakazi*, 2022 WL 385175, at *4 (7th Cir. 2022) ("the need for restrictions cannot be inferred from the diagnosis alone"). For the disability period in question here, the ALJ did consider Listing 111.07 in accordance with B.C.'s severe impairment of cerebral palsy and found that the listing requirements were not met at that time. April does not develop

any argument regarding how the ALJ erred in this analysis, and her belief that such a finding is illogical in and of itself is not enough. Since the ALJ considered the proper listing in conjunction with evidence from the appropriate period, after analyzing the record, the Court concludes that April has not shown reversible error on this issue.

## IV. CONCLUSION

The standard for disability claims under the Social Security Act is stringent. *Plessinger v. Berryhill*, 900 F.3d 909, 911 (7th Cir. 2018). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010) (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). After analyzing April's arguments, the Court can find no legal basis presented by her to reverse the ALJ's decision that B.C. was not disabled during the relevant period. Therefore, the ALJ's decision is **AFFIRMED**. Final judgment shall issue accordingly.

**SO ORDERED**.

Date: 8/7/2025

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution

All ECF-registered counsel of record via email